UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TODD L. LEANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporation,<br><br>　　　　Defendant.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporation,<br><br>　　　　Counterclaimant,<br><br>　　v.<br><br>TODD L. LEANY,<br><br>　　　　Counterdefendant. | Case No. 2:16-cv-01890-RFB-PAL<br><br>ORDER<br><br>Motion for Summary Judgment<br>[ECF No. 27]<br><br>Motion for Summary Judgment<br>[ECF No. 28] |

## I.　INTRODUCTION

Before the Court is Plaintiff Todd Leany's ("Leany") Motion for Summary Judgment, ECF No. 27, and Defendant Zurich American Insurance Company's ("Zurich") Motion for Summary Judgment, ECF No. 28.

## II.　PROCEDURAL BACKGROUND

This matter arises from the initiation of arbitration proceedings in which Zurich seeks to hold Leany liable for Century Steel Incorporation's ("Century Steel") alleged debts under the alter ego doctrine. Zurich filed an arbitration demand on July 29, 2016 with the American Arbitration

Association ("AAA"), seeking to recover $305,550 allegedly owed to Zurich by Century Steel. Zurich named Century Steel and Leany as respondents. While Century Steel responded to the arbitration proceedings, Leany did not. Leany instead initiated this suit against Zurich on August 10, 2016.

In this suit, Leany asserts two claims: (1) a claim for declaratory relief that Leany is not the alter ego of Century Steel and therefore is not subject to the arbitration proceedings; and (2) a claim for injunctive relief that prohibits Zurich from seeking to subject Leany to the arbitration proceedings. ECF No. 1. Zurich answered the complaint on October 18, 2016, asserting a counterclaim for declaratory relief that Leany is the alter ego of Century steel and that the AAA therefore has jurisdiction over Leany in the arbitration proceedings. ECF No. 7. Both parties now move for summary judgment. ECF Nos. 27, 28, 30 (corrected image of ECF No. 28). After the motions for summary judgment were fully briefed, ECF Nos. 32–35, the Court held oral argument on September 11, 2018, ECF No. 38.

### III. FACTUAL BACKGROUND

The Court incorporates by reference any factual findings made on the record at the September 11, 2018 hearing. The Court summarizes and supplements those findings here.

#### a. Undisputed Facts

The Court finds the following facts to be undisputed. Century Steel was founded in 1972 by Lynn Leany ("Lynn Leany")—the father of Todd Leany—and his two business partners. By the early 2000s, it became one of the largest structural steel companies in the Western United States, grossing millions of dollars annually. Various shareholders and investors were involved in Century Steel during its active years of operation and engaged in selling or redeeming their shares in Century Steel. Century Steel maintained corporate records throughout its time as an active corporation.

Leany's material involvement with Century Steel began in 1993, at which time Leany began working as a purchasing agent and logistics manager for Century Steel. In 1998, Leany was tasked with overseeing Century Steel's California operations. In December 2000, the Board of

Directors ("Board")—Lynn Leany, two business partners, and Leany—elected Leany as the president of the company. Leany began to oversee the day-to-day operations of Century Steel's Las Vegas headquarters. Leany has never owned any voting shares in Century Steel.

Century Steel first contracted with Zurich in February 2000 by purchasing a general insurance policy ("GL policy"). The GL policy was renewed annually through 2007. The GL Policy provided protection to Century Steel for claims of bodily injury and property damage. Under the policy, property damage included damages arising from construction defects—a liability that backdates to the completion of a construction project but that could arise years later. Century Steel also contracted with Zurich to purchase a workers' compensation policy ("WC policy") (collectively with the GL policy, "insurance policies") in February 2002. The WC policy was also renewed annually through 2007. The insurance policies required Century Steel to pay deductibles depending on the nature of settled claims. Both insurance policies ended on December 31, 2007.

In conjunction with the insurance policies, Century Steel and Zurich entered into a deductible agreement each year. The deductible agreements required Century Steel to deposit funds into an escrow account and to provide a letter of credit in favor of Zurich. Under the deductible agreements, Zurich would settle and pay claims submitted under the insurance policies. Zurich would then draw upon the escrow fund or the letter of credit to obtain the deductible amounts owed rather than invoicing Century Steel for each individual insurance claim. Zurich determined the amounts Century Steel was required to deposit in the escrow account and extend through the letter of credit. Leany signed the insurance policies and the deductible agreements in his capacity as Century Steel's president. He did not, however, personally guaranty either the insurance policies or the deductible agreements.

On March 30, 2006, Century Steel was recapitalized. New stock issued to remaining shareholders. Lynn Leany retained the only voting shares of the stock and transferred the remaining non-voting shares of the stock to Leany and Leany's sister, Tamara Leany Hunt ("Hunt"). Lynn Leany continued to maintain an office at Century Steel headquarters, serve as a member of the Board of Directors, and acted as the sole voting shareholder. He was the only person to ever hold a majority percentage of voting shares in Century Steel and was the principal

of Century Steel at the time it was sold in 2008. His estate continues to own the only voting shares in Century Steel to date.

Century Steel was sold to Pacific Coast Steel ("Pacific Steel") on April 1, 2008. Pacific Steel purchased the entirety of Century Steel's operations for 151.5 million dollars, including most of the outstanding contracts, equipment, and assets. But Pacific Steel did not purchase Century Steel's obligations under the insurance policies or the deductible agreements. Century Steel retained only certain assets, including real property, a few contracts, and operating capital.

At the time of the sale, Century Steel paid off millions of dollars in debt to secured and unsecured creditors. It also set aside approximately two million dollars in operating capital to satisfy creditors that were not satisfied from the sale proceeds. Century Steel also purchased a discontinued operations insurance policy from a nonparty insurance broker and provided an increase to the letter of credit in favor of Zurich for the prior insurance policies. The remaining proceeds were subsequently distributed to the existing shareholders: three trusts benefiting Lynn Leany, Leany, and Hunt. Approximately thirty million dollars was distributed to the trust benefitting Leany.

Century Steel amended its Articles of Incorporation thereafter, modifying the bylaws to allow for only two Board members. Lynn Leany and Leany served as the two Board members. Lynn Leany continued to hold the only voting shares in the company. Lynn Leany passed away in March 2013, at which time (or shortly thereafter) Leany became the sole Board member and officer of Century Steel. While he does not directly own any shares of Century Steel, his trust held 58.5% of the outstanding stock as recently as 2015.

On November 18, 2013, Zurich notified Century Steel that $305,550 was due under the deductible agreements based on Zurich's continued management of claims submitted under the insurance policies. Zurich notified Century Steel of the debt as it had already exhausted the letter of credit and the escrow funds. However, by this time, the two million dollars set aside from the sale of Century Steel had also been exhausted as the result of additional debts and unforeseen litigation. After no response from Century Steel, Zurich made a final demand for the alleged debt on October 28, 2015. Leany responded on behalf of Century Steel on November 3, 2015, stating

that Century Steel ceased operations in 2008 and has no remaining assets or capital to pay the alleged debt five years after its sale.

Since the sale of Century Steel, Leany has not wound down or dissolved the corporation. Further, as the sole Board member and officer, Leany has not held Board meetings since approximately 2014. Leany has personally loaned Century Steel funds to assist Century Steel in satisfying certain obligations, *e.g.* other debts and litigation costs. While smaller personal loans have not been documented through promissory notes, promissory notes are executed for larger loans. Leany has not been paid back in full for the loans he has made and has not been paid for the interest on the loans. Leany refuses to loan Century Steel funds to satisfy the alleged debt claimed by Zurich.

### b. Disputed Facts

The parties dispute whether Century Steel can be described as an undercapitalized corporation since it now lacks any assets or capital following the depletion of the funds set aside from its sale. The parties also dispute the reasoning for which Leany has yet to wind down and dissolve the corporation. Zurich contends that Leany has failed to do so to use Century Steel as a shield from creditors. Leany disagrees, stating that the corporation was not wound down or dissolved based on it owning certain assets for some time after the sale, managing certain bank accounts and insurance contracts, and being named as a party to litigation.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for a court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

**V.  DISCUSSION**

The parties dispute whether Leany is the alter ego of Century Steel. "The alter ego doctrine is a judicially created doctrine that the Nevada Legislature codified for corporations in 2001." Gardner on Behalf of L.G. v. Eighth Judicial Dist. Court in & for Cty. of Clark, 405 P.3d 651, 656 (Nev. 2017) (citing Nev. Rev. Stat. § 78.747). "The question of whether a stockholder, director or officer acts as the alter ego of a corporation must be determined by the court as a matter of law." Nev. Rev. Stat. Ann. § 78.747. "Nevada has long recognized that although corporations are generally to be treated as separate legal entities, the equitable remedy of 'piercing the corporate veil' may be available to a plaintiff in circumstances where it appears that the corporation is acting as the alter ego of a controlling individual." LFC Marketing Group, Inc. v. Loomis, 8 P.3d 841, 845 (Nev. 2000) (citing McCleary Cattle Co. v. Sewell, 317 P.2d 957 (Nev. 1957)). "Indeed, the 'essence' of the alter ego doctrine is to 'do justice' whenever it appears that the protections provided by the corporate form are being abused." Id. at 845–46 (citing Polaris Indus. Corp. v. Kaplan, 747 P.2d 884, 888 (Nev. 1987)).

Three elements must be satisfied, by preponderance of the evidence, to justify a finding that an individual is the alter ego for a corporation: "(1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction a fraud or promote injustice." Id. at 846 (internal punctuation marks omitted). The requirements are conjunctive; each of the elements must be present before the alter ego doctrine can be applied. N. Arlington Med. Bldg., Inc. v. Sanchez Const. Co., 471 P.2d 240, 243 (1970). Further, the Nevada

1  Supreme Court has recognized that "'[t]he corporate cloak is not lightly thrown aside.'" <u>Lorenz</u>
2  <u>v. Beltio, Ltd.</u>, 963 P.2d 488, 496 (Nev. 1998) (quoting <u>Baer v. Amos J. Walker, Inc.</u>, 452 P.2d
3  916, 916 (Nev. 1969)). The Nevada Supreme Court has emphasized that "[t]here is no litmus test
4  for determining when the corporate fiction should be disregarded; the result depends on the
5  circumstances of each case." <u>Id.</u> The Court first considers the third required element, finding that
6  adhering to the corporate fiction here would not sanction a fraud or promote injustice. The Court
7  then turns to the second required element, finding in the alternative that there is no unity of interest
8  and ownership between Leany and Century Steel.

### a. Fraud or Injustice

The Court first turns to the possibility of the corporate form sanctioning a fraud or promoting an injustice in this matter. Zurich essentially argues that it should be allowed to recover the alleged debt from Leany to prevent sanctioning fraud or promoting injustice based on three facts: (1) Leany received a substantial amount of money from the sale of Century Steel; and (2) Century Steel could not satisfy the Zurich's demand for the debt in 2013 and then 2015; and (3) Leany has yet to wind down or dissolve the company. The Court disagrees.

The undisputed facts in this matter demonstrate that, after operating as a successful business for decades, Century Steel satisfied its known debts at the time of its sale. Century Steel then set aside a substantial amount of funds—over two million dollars—for forthcoming debts that were then unknown. It also obtained additional insurance coverage related to ceasing its operations and increased the letter of credit issued in favor of Zurich. Century Steel distributed the remaining sale proceeds *only after* satisfying its existing debts and securing additional insurance protections.

Further, Century Steel was not aware of the debt Zurich now seeks; indeed, the debt did not yet exist. Zurich first notified Century Steel of the debt five years after the sale of Century Steel and then demanded payment two years later. The fact that Century Steel "ran into financial difficulty" decades after operating as a successful business and could not satisfy a debt five years after it ceased operations does not indicate a fraud or injustice. <u>See</u> <u>Ecklund v. Nevada Wholesale Lumber Co.</u>, 562 P.2d 479, 480 (Nev. 1977) (finding the record did not support a finding of injustice specifically because the corporation did not appear undercapitalized since "it conducted

business for 12 years before running into financial difficulty"). This fact also does not require Leany to personally satisfy the debt. Leany did not personally guarantee the insurance policies or the deductible agreements, and the record is void of any evidence suggesting he intended to do so. See id. (recognizing the party seeking to apply the alter ego doctrine "knew it was dealing with a corporation and could not reasonably have relied on [the individual's] personal credit, absent any conduct by [the individual] inducing it to do so."). The Court therefore finds that the record does not demonstrate that allowing the corporate form would sanction a fraud or promote an injustice based on Zurich's inability to recover the alleged debt.

### b. Unity of Interest and Ownership

In the alternative, the Court finds there is no unity of interest and ownership between Leany and Century Steel. When considering the unity of interest between an individual and a corporation, courts consider "the following factors, though not conclusive […] : (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." LFC Marketing Group, 8 P.3d at 845; see also Polaris Indus. Corp., 747 P.2d at 997. "Moreover, merely influencing and governing a corporation does not necessarily demonstrate the unity of interest and ownership resulting in the requisite inseparability of a corporation and shareholder". Wyatt v. Bowers, 103 Nev. 593, 597, 747 P.2d 881, 883 (1987).

Zurich first argues that Leany commingled funds with Century Steel by unilaterally determining when to loan Century Steel funds to satisfy corporate debts. Zurich emphasizes that the loans Leany has made have not been paid back in full and some are not documented via promissory notes. But the record lacks any evidence of Leany commingling Century Steel's funds with his property in an effort to avoid Century Steel's obligations. Loaning money to a corporation to satisfy an outstanding debt does not equate to liquidating a corporation's funds to avoid a debt. The latter is the type of activity the alter ego doctrine serves to defend against. See Polaris Indus. Corp., 747 P.2d at 888 (applying the alter ego doctrine to corporate officers that used corporate funds in a personal manner, leaving the corporation unable to repay its debts). There is no evidence that Leany benefited personally from loaning money to Century Steel; indeed, the opposite is

1 clearly true. Thus, Leany choosing when to and when not to loan his personal funds to assist in
2 satisfying Century Steel's debt does not establish a commingling of funds as contemplated by the
3 alter ego doctrine.

4 Zurich next argues that Century Steel was undercapitalized. The Court disagrees. Century
5 Steel operated as a successful business—grossing millions of dollars annually—for decades. It set
6 aside two million dollars for unknown debts after settling its known debts at the time of the sale.
7 Century Steel also increased the letter of credit in favor of Zurich at the time of the sale. Zurich
8 invoiced Century Steel for the alleged debt five years later. The exhaustion of the set-aside funds
9 and the letter of credit, due to litigation and other forthcoming debts, five years after the sale of
10 Century Steel does not indicate that Century Steel was undercapitalized. See Ecklund, 562 P.2d
11 at 480 (holding that a successful corporation "running into financial difficulty" does not support a
12 finding of undercapitalization).

13 Zurich finally argues that Leany failed to observe corporate formalities by failing to:
14 (1) document each loan made to Century Steel; (2) hold regular Board meetings after he became
15 the sole director and officer; and (3) wind down and dissolve Century Steel after the sale. The
16 Court finds these facts unpersuasive based on the sequence of the circumstances in this matter.
17 Specifically, Century Steel observed corporate formalities during the years it was an active
18 corporation. Century Steel's years of active operation encompass the time at which Century Steel
19 contracted with Zurich. The failure to observe some corporate formalities years after the contract
20 was formed and after the debt became due does not convince the Court that a unity of interest
21 exists between Leany and Century Steel as contemplated by the alter ego doctrine.

## VI. CONCLUSION

**IT IS ORDERED** that Plaintiff Todd Leany's Motion for Summary Judgment (ECF No. 27) is **GRANTED.** The Court orders declaratory relief as follows: Todd Leany is not an alter ego of Century Steel Incorporated and therefore is not subject to the arbitration proceedings initiated by Zurich American Insurance Company that are related to this matter.

///

**IT IS FURTHER ORDERED** that Defendant Zurich American Insurance Company's Motion for Summary Judgment (ECF No. 28) is **DENIED.**

**IT IS FURTHER ORDERED** that the remaining claims and counterclaims are dismissed accordingly.

**IT IS FURTHER ORDERED** that the Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED: September 24, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**